## MARRERO *v.* SKERRET ET AL.

## APPEAL from the District Court of San Juan, Section 1.

### No. 580.—Decided May 5, 1911.

ANNUITIES (CENSOS)—ADMINISTRATIVE PRIEST—PERSON TO COLLECT ANNUITY—
ROMAN CATHOLIC BISHOP OF PORTO RICO.—The Roman Catholic Bishop is
the only person who can institute an action to recover interest on an an-
nuity, an administrative priest or a parish priest not having such power.

ID.—PROOF OF CREATION OF ANNUITY—ACTION TO RECOVER INTEREST ON AN-
NUITY.—That an action to recover interest due on an annuity may prosper
it is indispensable to prove the existence of such lien by the best evidence,
the original document, or a certified copy thereof being the best evidence of
the creation of said lien.

ID.—INSUFFICIENCY OF PLAINTIFF'S EVIDENCE—DEFENDANT'S EVIDENCE—GEN-
ERAL DENIAL OF COMPLAINT.—The plaintiff having failed to prove the alle-
gations of his complaint, the defendants are not obliged to introduce any evi-
dence, the general denial of the complaint being sufficient.

ANNUITY — COLLECTION OF INTEREST — PRESCRIPTION — PERSONAL ACTION.—An
action to recover interest on an annuity is of a personal character and pre-
scribes on the lapse of five years.

ID.—ACTION TO RECOVER PRINCIPAL OF ANNUITY—PRESCRIPTION—REAL ACTION.—
An action to recover the principal of an annuity is of a real character and pre-
scribes on the lapse of 30 years.

ID.—ACKNOWLEDGMENT OF ANNUITY—ADMISSION TO THE PREJUDICE OF THIRD
PARTIES.—A supposed acknowledgment of an annuity by the owners of an
estate at a time when they had alienated the same cannot prejudice their
successors in interest who acquired the property prior to such acknowledg-
ment.

The facts are stated in the opinion.

*Mr. José L. Pesquera* for appellant.

*Mr. Eduardo Acuña* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In the present case the Rev. Alfonso Marrero, adminis-
trative priest of the parish of Toa Baja, brought this suit
against the defendants (naming them), who are alleged to
be in possession of the lands which constituted the ancient
estate "Julita," with the purpose of recovering the sum of
four thousand three hundred and fifty-four (4,354) Spanish
dollars in the nature of rents or income corresponding to
the annual instalments of 27 years, of a *censo* (encumbrance)
for three thousand six hundred and twenty-eight (3,628) *pesos*

*macuquinos* (unmilled coins) and seventy-five (75) cents, which was said to affect all the lands of the said estate "Julita." In the complaint the following appear to be the essential allegations:

"(*a*) Possession by the defendants of the several parcels of land into which the estate 'Julita' is divided.

"(*b*) That said estate is encumbered by *censo* for the said sum of three thousand two hundred and twenty-five Spanish dollars and fifty cents, equivalent to three thousand six hundred and twenty-eight dollars *"macuquinos"* (unmilled coins) and seventy-five cents belonging to the images of the 'Santísimo' and 'Rosario' which are worshipped in the parish church of Toa Baja, which *censo* was constituted by a former owner of the estate whose name was José Canales, and acknowledged first by his heirs and afterwards by Don Manuel Skerret and by the partnership Skerret Brothers.

"(*c*) That the instalments of said *censo*, corresponding to the last twenty-seven years and amounting to four thousand three hundred and fifty-four Spanish dollars and fifty-four cents, were unpaid.

"(*d*) The refusal on the part of the defendants to pay said sum, notwithstanding the amicable steps taken by the plaintiff."

To this complaint the defendants Skerret made answer as follows:

"First. A general denial of all and each one of the allegations of the complaint, and

"Second. That the defendants acquired the estate in question in the year 1879 by virtue of a conveyance made to them by the partnership Skerret Brothers for a debt, acknowledged by a public deed executed in the year 1877, and that said conveyance was made free from all burdens and encumbrances and was recorded in the registry of property, there being stated, as regards the burdens or encumbrances affecting the same, the following:

"'Nothing being known as to whether said property is subject to any other encumbrance, although attention must be called to the fact that when the other portion of the estate was recorded on folio 96, property No. 20, of this volume, encumbrances amounting to three thousand six hundred and twenty-eight *pesos* and seventy-five cents were acknowledged in the deed which served for the purpose of the record, which encumbrances, the registration of which was

not known, must be considered as belonging to the portion of this number, if they affected the whole of the estate.

" 'That it was many years after the conveyance was made to the ladies, Skerret-Ramírez, that the partnership Skerret Brothers instituted possessory proceedings in regard to certain property of 208 acres formerly making part of the estate "Julita," and said partnership specifically and expressly acknowledged, as encumbering said property, a *censo* amounting to three thousand six hundred and twenty-eight *pesos* and seventy cents in favor of the images of the "Santísimo" and "Rosario." ' '

"Third. That no entry in regard to the *censo* claimed in this case had been transferred from the books of the 'Antigua Anotaduría de Hipotecas' to the registry of property in connection with the property of the respondents, and

"Fourth. That the action prosecuted for the recovery of the instalments of a *censo* had prescribed in accordance with the provisions of sections 1523, 1865, and 1867 of the Revised Civil Code."

The other defendants made similar and various other answers consisting principally of general denials. On the trial the questions at issue developed into the following:

First. Had the plaintiff, as administrative priest, authority to bring such a suit as the present for the collection of the income of a *censo* belonging to the parish of Toa Baja?

Second. Did the *censo* set out and described in the complaint really exist, or if it existed, was any legal evidence of its existence presented on the trial?

Third. Has the statute of prescription run against the *censo* on which the suit is founded?

First. Taking these questions up in their order, we would say that the plaintiff in this case fails to show any authority whatever for bringing such a suit as the present, under our laws, canonical as well as civil; the Roman Catholic Bishop of Porto Rico is the only person who can institute a suit like the one at bar, and not even the parish priest himself could bring such a suit, much less an administrative priest exercising his functions. The Bishop of Porto Rico is the proper person to bring a suit for property belonging to the

Roman Catholic Church in this Island, and this authority in him is exclusive until the contrary is properly shown. No allegation nor proof of such authority on the part of the plaintiff appears in the record further than that he is the administrative priest of Toa Baja. His appointment as such by the bishop did not invest him with a right to sue for property such as that involved herein. This has been already *implicitly* decided by this Supreme Court in the church cases, and it is sufficient in itself to dispose of this case and to authorize us to deny any relief to the appellant. (1 Bouvier's Law Dictionary, p. 246, *verbum Bishop;* Civil Code of Porto Rico, secs. 1611–1619; *Díaz Caneja* v. *Marxuach,* 8 P. R., 458.)

Second. If such a *censo* as the present ever existed, which may be the fact, no legal proof was brought on the trial showing the existence thereof. Such a *censo* should have been created by a public written document, and such writing, which was neither presented nor mentioned in the case, would have been the best evidence of the existence of such an encumbrance. The best evidence by which the matter is capable of being proven should be produced to sustain a proposition of fact maintained by any party. The original document creating the *censo* was not offered in evidence, nor was its absence accounted for in any way whatever, nor was a certified copy of the same, or even a simple copy thereof, presented or referred to in the record. There was no legal evidence of the existence of the *censo* produced on the trial. The only evidence which the plaintiff pretended to offer was a certificate from the Registrar of Property of San Juan that the estate "Julita" was burdened with a *censo* of such and such an amount. It does not appear upon what conditions, if any, the *censo* was granted; whether it was for masses for the repose of the maker's soul, or for the care of his grave, or the support of a priest, or for what purpose, or whether it was a simple unconditional grant. Nor does it appear that the same has ever been transferred

from the old records to the new, as required by section 397 of the Mortgage Law. This showing is not sufficient to prove the existence of the *censo,* and it was on this point that the court below rested its decision in favor of the defendants; in other words, the court sustained the demurrer to the evidence; and it was incumbent upon the plaintiff in this case, as well as in all others, to make out his case by competent evidence, and until this is done the defendants are not required to present any evidence whatever nor to plead any defense further than a general denial. (Law of Evidence, sec. 108, Session Acts 1905, p. 91.)

Third. But even had the plaintiff the requisite authority to bring the suit, and had he presented the *censo* in accordance with the certificate which he offered in evidence, the statute of prescription would preclude a recovery, because no suit has been instituted within the time prescribed by law. From the testimony of Don Andrés Crosas, it appears that no effort has been made for more than 30 years to collect any instalment of the income due, or any such a *censo* or encumbrance. Then, even were the action a real action, as contended by the plaintiff, yet even such an action has prescribed. The *censo* appears to have been constituted in or before 1879. The instalments of the *censo* are not, however, the subject of a real action, but of a personal one, and therefore under no circumstances could a recovery be had under our statutes for more than five years' income as against the defendants who alleged prescription.

It is true, as maintained by appellant, that the Skerret Brothers acknowledged that there was a *censo* on their property, but at the time that they made the acknowledgment they had already deeded the land owned by them, and no admissions of the Skerrets as to encumbrances on any property which they held would be binding on any person who derived his title from them at a period antecedent to the time of their statements. The defendants Skerret, moreover, denied, and the proof does not clearly show, that their land

ever formed part of the *finca* "Julita" on which the *censo* is claimed to have existed. The proof merely seems to show that the property of the defendants Skerret was contiguous to the property of the Skerret Brothers, their predecessors in title. It is not pretended that any effort whatever has been made to collect any of the annual income from this *censo* during the last 27 years, and under the statute (Civil Code, secs. 1523, 1865, and 1867) such action as this has long since prescribed.

It is suggested in argument that a judgment ought to have gone against Andrés Crosas O'Farrell because of his failure to make any proof in his own behalf, and also that judgment ought to be given against Isabel Sampayo because she disclaims any interest. In both these instances, however, it is necessary that the claimant should make out his case; and as he did not do this, the defendants, Crosas and Sampayo, are entitled to the benefit of his failure; and no judgment could have properly been entered against them in the trial court herein.

Other questions of less importance may appear in the record, but they are not essential to the decision of the case in the view we have taken of the main questions heretofore discussed. The plaintiff has failed on two vital points to make out his case; and the defendants have presented at least one effectual defense thereto—that of prescription.

For all of these reasons the judgment of the lower court should be in all things affirmed.

*Affirmed.*

Justices Wolf and del Toro concurred.

Mr. Chief Justice Hernández signed, stating that he concurred in the judgment, but not in all the grounds thereof.

Mr. Justice Aldrey did not take part in the decision of this case.